**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GEORGIA SELLERS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:05-CV-1529-P |
| | § | |
| JO ANNE B.  BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History:  On September 23, 2002, Plaintiff filed an application for disability insurance benefits and Supplemental Security Income ("SSI") payments alleging disability due to high blood pressure, iron deficiency, and varicose veins in her legs.  (Administrative Record 60-63 [Hereinafter Tr.].)  Plaintiff alleged that she had been disabled since July 25, 2002.  (Tr. 60).

The Administrative Law Judge ("ALJ") conducted a hearing on September 18, 2003. (Tr.  165-77.)  On December 1, 2003, the ALJ denied Plaintiff's request for disability insurance benefits and SSI payments, finding that Ms.  Sellers was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work.  (Tr.  21.)  Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on June 3, 2005,

the Appeals Council denied the request.  (Tr. 4.)  Therefore, the ALJ's decision became the

Commissioner's final decision for purposes of judicial review.  *See Masterson v. Barnhart*, 309

F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on August 2, 2005.  Defendant filed her answer on

October 7, 2005.  On February 16, 2006, Plaintiff filed her brief and on March 30, 2006,

Defendant filed her brief.  Plaintiff filed a reply brief on April 17, 2006.

Standard of Review–Social Security Claims:  When reviewing an ALJ's decision to deny

benefits, the scope of judicial review is limited to a determination of whether: (1) the ALJ's

decision is supported by substantial evidence and (2) the proper legal standard was applied.

*Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (citing *Villa v. Sullivan*, 895 F.2d 1019,

1021 (5th Cir. 1990)).[1]  "Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th

Cir. 1983)).  In determining whether substantial evidence exists, the court reviews the entire

record, but does not reweigh the evidence, retry the issues, or substitute its own judgment.  *Id.* at

1022 (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)).  Where the

Commissioner's findings of fact are supported by substantial evidence, they are conclusive.

*Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S.

---

[1]  "The scope of judicial review of a decision under the Supplemental Security Income
Program is identical to that of a decision under the Social Security Disability Program."  *Harrell
v. Bowen*, 862 F.2d 471, 475 n.4 (5th Cir. 1988) (citing *Davis v. Heckler*, 759 F.2d 432, 435 (5th
Cir. 1985)).  Likewise, the relevant laws and regulations governing both types of claims are
identical.  *Davis*, 759 F.2d at 435 n.1.

389, 390, 91 S. Ct. 1420, 1422 (1971)).

Discussion:

To prevail on a claim for disability insurance benefits or SSI payments, a claimant bears the burden of establishing that he or she is disabled, which is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505.  Substantial gainful activity is defined as "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  § 404.1510.  Where a claimant applies for benefits, the claimant must prove the existence of a disabling impairment between the claimant's alleged onset date and the date last insured.  *See Moss v. Apfel*, No. 98-20215, 1999 WL 130146, at *1 (5th Cir.  Feb. 12, 1999) (citing § 404.320(b)(2)).

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* § 404.1520.  Under the first four steps, a claimant has the burden of proving that his disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove that there is other substantial gainful activity that the claimant can perform.  *See*, *e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

In this case, the ALJ proceeded to step four and determined that Plaintiff retained the capacity to perform her past relevant work.  (Tr.  21.)  He therefore denied Plaintiff's request for disability insurance benefits and SSI payments.  (Tr.  21-22.)

The documents contained in the administrative record reflect the following chronology of

medical care:

Plaintiff saw a nurse at the Conway Outpatient Clinic for a prescription refill on February 28, 2000.  (Tr.  139.)  The records from this visit indicate that her primary diagnosis was high blood pressure.  (Tr.  139.)  On August 15, 2001, Plaintiff saw a doctor at the Conway clinic for a follow-up appointment regarding her lower back pain.  (Tr.  137.)  The doctor listed her medications as: Flexeril, Ultram and Clonidine.  (Tr.  137.)  The doctor noted that Plaintiff's blood pressure had improved with use of Clonidine.  (Tr.  137.)  Plaintiff returned for another follow-up appointment on December 5, 2001.  (Tr.  136.)  She reported experiencing edema in her left ankle.  (Tr.  136.)  An X-ray was taken of her ankle and she was scheduled to return for a follow-up appointment in two weeks.  (Tr.  136.)  Plaintiff returned on December 13, 2001.  (Tr.  135.)  The doctor reviewed the X-ray of her ankle and determined that the swelling would resolve itself without further treatment.  (Tr.  135.)  The doctor also noted that Plaintiff suffered from hypertension, lower back pain and muscle spasms.  (Tr.  135.)

Plaintiff was evaluated at the Conway Orthopedic Clinic on February 13, 2002.  (Tr.  134.)  Her supine straight leg raising score was 70 and her deep tendon reflex score was +1.  (Tr.  134.)  A spinal X-ray revealed a narrowing of the L1-2 and L2-3 disk spaces with associated anterior and lateral osteophyte formation.  (Tr.  133.)  Small anterior osteophytes were also noted at L3-4.  (Tr.  133.)  Plaintiff's doctor prescribed 800 mg of Ibuprofen twice per day.  (Tr.  134.)

On February 18, 2002, Plaintiff was seen by a nurse at the Conway Outpatient Clinic because she was suffering flu-like symptoms and because she needed a new prescription for Clonidine.  (Tr.  132.)  The nurse noted that Ms.  Sellers had a cough and congestion.  (Tr.  132.)  Her prescriptions for Clonidine and Flexeril were refilled and she was prescribed Capoten for her

4

hypertension, Humibid for her cough and congestion and a back brace for her lower back pain. (Tr.  132.)  Plaintiff returned on February 27, 2002, for a follow-up appointment.  (Tr.  131.)  A nurse noted that her blood pressure was lower and that her medications were current.  (Tr.  131.)

On July 25, 2002,  Plaintiff went to the Franklin Medical Center emergency room due to a nose bleed.  (Tr.  117.)  She reported that she visited the Louisiana State University Health Sciences Center (LSUHSC) the previous Thursday due to a nose bleed.  (Tr.  119.)  A foam sponge was placed in her nostril to control the bleeding.  (Tr.  120.)  The attending doctor noted that she suffered from uncontrolled hypertension.  (Tr.  120.)  Plaintiff returned to the emergency room the next day because she was suffering from a nose bleed and cough.  (Tr.  113.)  Blood pressure testing revealed elevated systolic and diastolic pressure levels.  (Tr.  114.)  She was given Catapres, an anti-hypertensive agent, and was released after her nose was no longer bleeding.  (Tr.  114.)  Plaintiff again returned to the emergency room on July 29, 2002, complaining of high blood pressure and dizziness.  (Tr.  130.)  Her blood pressure was 140/78. (Tr. 130.)  The medical records from this visit are illegible.  (Tr.  130.)

On August 16, 2002, Plaintiff was admitted to LSUHSC for one week due to shortness of breath and bilateral leg edema.  (Tr.  124.)  She was treated by Dr.  Patrick Flyte, who noted that she had a history of medical non-compliance.  (Tr.  125.)  Dr.  Flyte performed an exam and noted bibasilar crackling sounds in her chest and bilateral edema in her legs.  (Tr.  124.)  An electrocardiogram revealed mild concentric left ventricular hypertrophy and a normal ejection fraction.  (Tr.  125.)  A chest X-ray showed increased pulmonary vasculature and cardiomegaly. (Tr.  125.)

During her hospital stay, Plaintiff's weight dropped from 223 pounds to below 200

pounds and her blood pressure stabilized with medication.  (Tr.  125.)  Dr.  Flyte diagnosed her

with a new onset of congestive heart failure as well as hypertension, iron deficiency anemia, and

hypercholesterolemia.  (Tr.  126.)  He recommended that she eat a low fat and low sodium diet

and prescribed the following medications: 325 mg of aspirin per day, 0.1 mg of Clonidine three

times per day, 325 mg of ferrous sulfate per day, 20 mg of Lasix once per day, 20 mg of K-Dur

once per day, 5 mg of Altace twice per day, 25 mg of Aldactone once per day, and 20 mg of

Zocor once per day.  (Tr.  126.)  He noted that her blood pressure was within normal limits upon

modification of her medicine.  (Tr.  126.)

On October 29, 2002, Ms.  Sellers returned to LSUHSC for a follow-up appointment.

(Tr.  122.)  Her blood pressure was taken four times and the readings were: 220/120, 208/140,

200/118 and 190/110.  (Tr.  122.)  Plaintiff reported that she was all out of her medications and

did not have the money to purchase more.  (Tr.  122.)  The doctor informed Ms.  Sellers that she

was at risk of having a stroke if she did not take her medications.  (Tr.  122.)  She was given

samples of Clonidine to take home.  (Tr.  122.)

On November 18, 2002, Plaintiff was evaluated by Dr.  David Herbert, M.D, at the

request of the Social Security Administration.  (Tr.  141.)  Her chief complaints were: chronic

congestive heart failure, arterial hypertension, varicose veins and anemia due to iron deficiency.

(Tr.  141.)  Plaintiff also reported that she was diabetic and that she occasionally experienced

swelling in her ankles.  (Tr.  141.)  She denied suffering chest pain, shortness of breath at night

or back pain.  (Tr.  141.)  She reported that she regularly took Clonidine and Lasix and that she

was supposed to be taking additional medications, but could not afford them.  (Tr.  141.)  Her

blood pressure was 160/100 and an electrocardiogram was normal.  (Tr.  143.)  A chest X-ray

revealed borderline cardiomegaly and heavy calcification of the lymph nodes in both hilar areas of questionable significance. (Tr. 143.) A lumbar X-ray revealed early spur growth at several vertebrae. (Tr. 143.)

Regarding Plaintiff's hypertension and heart condition, Dr. Herbert opined that Plaintiff's uncontrolled hypertension appeared to be causing end organ damage in that her chest X-ray revealed mild cardiomegaly. (Tr. 143.) He did not find evidence of chronic heart failure. (Tr. 143.) He also noted that Plaintiff suffered from non-specific arthralgia with no real impairment of function of any joints. (Tr. 143.) His final assessment was that "medically, I see no reason she could not do routine walking, sitting, carrying and lifting for an eight hour day especially if her blood pressure is controlled." (Tr. 143-44.)

Plaintiff testified on her own behalf at the administrative hearing.[2] (Tr. 167-77.) She stated that she was 59 years old and had obtained a high school education. (Tr. 168-69.) She testified that her sole work experience was as a deli cook and that she finally quit working after suffering nose bleeds, high blood pressure and heart failure. (Tr. 171-72.) Plaintiff testified that after seeking medical attention for her nose bleeds, her blood pressure medication was changed and she was placed on a low sodium diet, which improved her symptoms and led to significant weight loss. (Tr. 172.) She also stated that she "broke a vein" in her legs and was unable to stand for extended periods of time. (Tr. 173.)

In response to the ALJ's request that she describe her activities of daily living, Plaintiff stated that she does housework that does not involve lifting, watches TV, reads, and sometimes drives. (Tr. 173-74.) She also testified that she has pain when sitting due to a pulled muscle in

---

[2] Plaintiff was not represented at the hearing. However, she acknowledged her right to representation and elected to proceed without it. (Tr. 167-68.)

her lower back that occurred during her last term of employment.  (Tr.  174-75.)  She said she

can sit for a couple of hours before she has to lay down and can stand for two or three hours

before she has to rest.  (Tr.  175-76.)  Regarding her ability to lift objects, she testified that she

used to be able to lift thirty pound cases of chicken, but could presently lift "at least" ten pounds.

(Tr.  176.)

**The ALJ's Evaluation of Plaintiff's Residual Functional Capacity**

Plaintiff first argues that the ALJ disregarded applicable legal standards because he

evaluated Ms.  Seller's RFC as though she was drug compliant even though the objective

evidence demonstrated that she was unable to purchase her prescribed medications.  In support

of her argument, Plaintiff relies on Security Ruling 82-59, which sets forth the guidelines that an

ALJ must follow before determining that a claimant's failure to follow a prescribed treatment

regimen precludes a finding of disability.

Specifically, she argues that the ALJ should have addressed the fact that she could not

afford to purchase medications for her hypertension.  *See* Pl.'s Brief at 10-11.  An inability to

pay for medications can render an applicant disabled even though a medical condition might

otherwise be remediable.  *See Lovelace v.  Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Tamez v.

Sullivan*, 888 F.2d 334, 336 (5th Cir. 1989).  The record suggests a history of non-compliance

with her prescribed medications.  (Tr. 125.)  There is but a single instance in which Plaintiff

explained that her lack of compliance was due to her inability to pay for medications.  (Tr. 122.)

However, the record otherwise shows that she was taking a medication for her blood pressure,

including the date on which she was examined by Dr.  Herbert.  In preparation for her

administrative hearing, she listed Clonidine as a prescription she was then currently taking, (Tr.

107), and further related at the hearing that she was taking a medication for her high blood pressure, (Tr.  172.).

However, notwithstanding Plaintiff's argument, the Magistrate Judge finds no basis for applying SSR 82-59, 1982 WL 31384 (S.S.A. 1982), to her disability claim.  The rule is applicable only in instances where an ALJ finds that a claimant is not disabled due to the claimant's failure to follow a prescribed course of treatment.  Although the record contains some notations indicating unspecified instances of non-compliance, the ALJ did not find that her blood pressure alone or in combination with her other impairments were not disabling because of her failure to follow medical directives.  Rather, the ALJ gave great weight to Dr.  Herbert's finding that she had arterial hypertension, poorly controlled at the present, but despite this circumstance it did not preclude her ability to engage in substantial gainful activity.  (Tr.  143-44.)  In affording weight to Dr.  Herbert's findings, the ALJ noted that his opinion was consistent with the objective evidence in the record.  (Tr.  19.)[3]

**The ALJ's Assessment of Plaintiff's Credibility**

Plaintiff also argues that the ALJ failed to apply the correct legal standard when assessing Plaintiff's credibility because the ALJ did not consider the seven factors set forth in Social Security Ruling 96-7p.  The seven factors are:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of

---

[3]  Ms.  Sellers was taking her prescribed medication for hypertension both when she was examined by Dr.  Herbert as well as at the time of the administrative hearing.

pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (S.S.R. 1996).

However, Plaintiff's argument is without merit, because the ALJ addressed all of the factors that applied to Plaintiff's condition. *See Nall v. Barnhart*, 78 Fed. Appx. 996, 997 (5th Cir. 2003) (holding that a failure to apply all of the factors in SSR 96-7p was harmless error). The ALJ discussed Plaintiff's testimony regarding her activities of daily living and concluded that her level of activity was higher than that of a totally disabled individual. (Tr. 17, 19.) He also recounted her testimony regarding the impairments she believed precluded her from working and discussed the medical evidence pertaining to the severity of her alleged impairments. (Tr. 17-19.) He also noted that Plaintiff took Tylenol to control lower back pain. (Tr. 19.)

The ALJ did not discuss the final three factors because there was little or no evidence relating to them. It is clear from the medical records and Plaintiff's testimony that prescription medication was the primary tool used to control her symptoms. While there is also evidence in the record that Ms. Seller's physician recommended that she start eating a low-fat, low-sodium diet and that she was prescribed a back brace, Plaintiff did not describe how she was prejudiced by the ALJ's failure to discuss these forms of treatment. Similarly, although Plaintiff testified that she needed to "rest" after standing for more than a couple of hours, this claim was contrary to the objective medical evidence and the opinion of Dr. Herbert. Resolution of this conflicting evidence was reserved to the ALJ who found her claims credible only to the extent that her

limitations were supported by other evidence in the record.  (Tr.  21.)  Since the ALJ did not find

that she needed this accommodation, there was no occasion to address whether it would have

rendered her unable to work.

**The ALJ's Assessment of the Physical Requirements of Plaintiff's Past Relevant Work**

Finally, Plaintiff argues that the ALJ did not follow the correct legal standards in

determining the physical requirements of Plaintiff's past work as a deli cook.  In the alternative,

Plaintiff argues that substantial evidence does not support the ALJ's finding that Ms.  Sellers

could return to her past relevant work.

An ALJ is required to assess the physical demands of a claimant's past jobs when

determining whether the claimant can perform her former work.  *Villa v. Sullivan,* 895 F.2d

1019, 1022 (5th Cir. 1990).  This determination may rest on the claimant's own descriptions of

her past work performance.  *Id*.  Additionally the ALJ may "take notice of job data in the

Dictionary of Occupational Titles ("DOT"), which reflects the exertional requirements of a job

as performed in the national economy."  *Id*.  (citing 20 C.F.R. § 404.1566(d)(1)).

In his findings, the ALJ recounted that Plaintiff described her past work as a "deli/short-

order cook" and that she never lifted more than ten pounds.  (Tr.  20.)  Utilizing the descriptive

information from DOT 313.374-014, which lists the exertional requirements of a short-order

cook as the job is performed in the national economy, he determined that Ms.  Sellers retained

the capacity to perform her past employment because a short-order cook is not required to lift

more than twenty pounds.  (Tr.  20.)  Plaintiff argues that the ALJ incompletely summarized her

description of past relevant work because she indicated on her Disability Report Form that her

past work required her to lift thirty pounds.  However, a review of the written documentation

11

completed by Ms.  Sellers demonstrates that she consistently averred that ten pounds was the heaviest weight she was required to lift *by herself* at any of her past three employment positions. (Tr.  80, 89-91.)  Although she testified that she had previously lifted 30 pound cases of chicken from time to time, (Tr.  176), the specific requirements of *that* employment did not preclude the ALJ from finding that she could meet the exertional requirements of a short-order cook set out in the DOT and in light of the Plaintiff's own testimony describing that she was only required to lift ten pounds as the maximum exertional requirement of her last job.  *See Villa*, 895 F.2d at 1022.

**RECOMMENDATION:**

For the forgoing reasons, it is recommended that the District Court enter its order

AFFIRMING the Commissioner's decision and that a judgment be entered DISMISSING

Plaintiff's complaint with prejudice.  A copy of this recommendation shall be transmitted to

counsel for the parties.


Signed this 20th day of September, 2006.

Wm. F. Sanderson Jr.
United States Magistrate Judge


<u>NOTICE</u>

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.